[Cite as *State v. Daniel*, 2014-Ohio-2387.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100040

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CARL DANIEL

DEFENDANT-APPELLANT

## JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-87-222969-ZA

**BEFORE:** Celebrezze, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** June 5, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Yosef M. Hochheiser
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Defendant-appellant, Carl Daniel, appeals the trial court's May 24, 2013 order denying his application for conditional release from a fully-secured mental health facility, the Northcoast Behavioral Healthcare facility ("Northcoast"), to a 24-hour supervised dual-diagnosis treatment facility. After a careful review of the record and relevant case law, we reverse and remand for proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶2} The record reflects that for a large part of his life, appellant has struggled with severe mental illness and substance abuse. In 1987, he was found not guilty by reason of insanity of a charge of aggravated robbery with gun specifications. Appellant committed the aggravated robbery while on conditional release from a 1984 case involving the attempted murder of an arresting police officer. Since being recommitted in 1987, appellant has been granted conditional releases on three separate occasions — in 1999, 2002, and 2006. However, on each occasion, he was readmitted to Northcoast for violating the terms of his conditional release. The violations were primarily due to testing positive for cocaine, marijuana, and alcohol. Appellant has been hospitalized at Northcoast since 2007.

{¶3} On December 11, 2012, Dr. Joy Stankowski, the Chief Clinical Officer of Forensics at Northcoast, reported to the trial court that appellant was ready for conditional release to a 24-hour supervised group home. Dr. Gary Waltz, appellant's treating

psychiatrist at Northcoast, and Dr. Peter Barach, a psychiatrist with the Court Psychiatric Clinic, concurred with Stankowski's recommendation.[1]

**{¶4}** In March 2013, the trial court held an evidentiary hearing to determine whether appellant should be conditionally released. Opposing appellant's release, the state argued that he remains a threat to the public's safety and welfare.

**{¶5}** On May 24, 2013, the trial court denied appellant's request for conditional release. Specifically, the court found that,

> [b]ased upon the evidence and testimony presented, the court finds by clear and convincing evidence that defendant remains a mentally ill person subject to court ordered commitment pursuant to Ohio Revised Code 2945.40. Based upon the testimony and evidence presented in court and of the record and considering the arguments of counsel, the treatment needs of the defendant and the safety of the community, the request for Level V conditional release is denied at this time.

This appeal followed, in which appellant raises a single assignment of error for review.

## II. Law and Analysis

**{¶6}** In his sole assignment of error, appellant argues that the trial court's decision denying his request for conditional release subject to placement in a 24-hour group home was contrary to the applicable law and the evidence presented.

---

[1] The trial court had denied similar requests for conditional release filed by Northcoast on behalf of appellant in 2008, 2010, and 2011.

**{¶7}** R.C. 2945.401 et seq. governs a defendant's change in placement from one mental health facility or program to another. R.C. 2945.401(D)(1), which governs such a transfer or change in the conditions of a person's commitment, provides:

> [W]hen a defendant or person has been committed under section 2945.39 or 2945.40 of the Revised Code, at any time after evaluating the risks to public safety and the welfare of the defendant or person, the chief clinical officer of the hospital, facility, or program to which the defendant or person is committed may recommend a termination of the defendant's or person's commitment or a change in the conditions of the defendant's or person's commitment.

**{¶8}** On recommendation of the chief clinical officer of a hospital, program, or facility, the trial court may approve, disapprove, or modify the recommendation to change a defendant's placement. R.C. 2945.401(I).

**{¶9}** The statute requires that the trial court conduct a hearing at which the state has the initial burden of proving that a change to a less restrictive status for a defendant would, "by clear and convincing evidence," pose "a threat to public safety or a threat to the safety of any person." R.C. 2945.401(G)(2).

**{¶10}** "Clear and convincing evidence" is more than a mere preponderance of the evidence. Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985); *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶11}** At a hearing held pursuant to R.C. 2945.401, the trial court is required to consider the factors listed in R.C. 2945.401(E), which states:

In making a determination under this section regarding nonsecured status or termination of commitment, the trial court shall consider all relevant factors, including, but not limited to, all of the following:

(1) Whether, in the trial court's view, the defendant or person currently represents a substantial risk of physical harm to the defendant or person or others;

(2) Psychiatric and medical testimony as to the current mental and physical condition of the defendant or person;

(3) Whether the defendant or person has insight into the defendant's or person's condition so that the defendant or person will continue treatment as prescribed or seek professional assistance as needed;

(4) The grounds upon which the state relies for the proposed commitment;

(5) Any past history that is relevant to establish the defendant's or person's degree of conformity to the laws, rules, regulations, and values of society;

(6) If there is evidence that the defendant's or person's mental illness is in a state of remission, the medically suggested cause and degree of the remission and the probability that the defendant or person will continue treatment to maintain the remissive state of the defendant's or person's illness should the defendant's or person's commitment conditions be altered.

{¶12} In the case at bar, the state argues that it presented clear and convincing evidence that appellant is a threat to the public, and therefore the court properly denied appellant's request for conditional release. We do not agree.

{¶13} At the March 2013 evidentiary hearing, the trial court heard testimony from individuals associated with appellant's treatment and supervision at Northcoast. Also present were those charged with overseeing appellant's care and conduct on conditional release. Specifically, the trial court heard testimony from Dr. Gary Waltz, appellant's treating psychiatrist at Northcoast; Jeff Urgo, appellant's social worker at Northcoast;

Harriet Perantinides, Northcoast's forensic examiner; Dr. Peter Barach, a psychologist with the Court Psychiatric Clinic; and Lottie Gray, coordinator for the Conditional Release Unit for Recovery Resources and forensic monitor for Cuyahoga County.

{¶14} During the hearing, Dr. Waltz acknowledged that appellant remains mentally ill. However, he advised the trial court that, in his medical opinion, discharge to a group home was the appropriate, least restrictive alternative. Dr. Waltz explained that appellant's mental illness has been stabilized through the use of medication and that appellant must now address his substance abuse problems. As Dr. Waltz noted, Northcoast is not a substance abuse center and cannot provide appellant the necessary treatment he would receive at a dual-diagnosis treatment facility. The court questioned Dr. Waltz at length about appellant's relapse history and his unsuccessful conditional release experiences in 1986, 1999, and 2007. Dr. Waltz admitted that relapse is always a possibility in any mental illness case, but that such a risk is minimized in this case because appellant's schizophrenia has been well stabilized, and he is now motivated to address his substance abuse issues.

{¶15} Jeff Urgo, appellant's current social worker, noted that appellant has been consistently well behaved and was regularly participating in a full array of treatment and other classes.

{¶16} Dr. Barach, who agreed with Northcoast's assessment and recommendation, was questioned about his risk assessment evaluation, which concluded that appellant was a low risk for violence. Dr. Barach acknowledged that he had previously disagreed with

Northcoast's recommendations to place appellant on conditional release in 2008 and 2010. When asked to explain his change in opinion, he stated that appellant's attitude about his treatment and condition had changed over the years. According to Dr. Barach, appellant now accepted his mental illness and had internalized a need to continue treatment. His behavior was no longer provocative, and he routinely followed rules and met expectations.

{¶17} Lottie Gray, the conditional release coordinator, described the conditional release program appellant would be enrolled into and provided the court with information regarding the level of supervision appellant would be subject to and the nature of the treatment he would receive. Significantly, Gray explained the "dual diagnosis treatment" format of the residential group facility and its ability to more efficiently address appellant's substance abuse problems. Gray acknowledged that the residential group home is not a locked-down facility. However, residents are required to sign in and out of the facility and are subject to a curfew and random drug and alcohol testing.

{¶18} Although the state objected to appellant's conditional release, it did not request a second opinion from any mental health professional; nor did it object to the findings and recommendations of the Northcoast team. Rather, the state relied solely on its position that conditional release was improper given appellant's history of relapse and noncompliance with the requirements of conditional release.

{¶19} We reject the state's position and find that the trial court erred in relying solely on appellant's past conduct in denying his request for conditional release. We

recognize that appellant's past history is a relevant factor the trial court was required to consider pursuant to R.C. 2945.401(G)(5). However, were this court to follow the trial court's approach, no person who had previously violated the terms of his or her conditional release program would ever be conditionally released following further progress in addressing their mental health issues. Such an outcome ignores the remaining R.C. 2945.401(G) factors and is contrary to the purpose of R.C. 2945.401, which aims to return such persons, following successful treatment, to the general community. *State v. Roden*, 8th Dist. Cuyahoga No. 86841, 2006-Ohio-3679, ¶ 29.

### III. Conclusion

{¶20} After due consideration of the relevant R.C. 2945.401(G) factors, we conclude that the state failed to prove by clear and convincing evidence that releasing appellant to the less restrictive environment at the "dual-diagnosis" treatment residential group facility would represent a threat to public safety or to the safety of any other person. Here, the state merely argued that since appellant violated his conditional release in the past, he could violate in the future, and such a violation might involve the risk of harm to the public. In our view, such an argument does not satisfy the state's burden of proof under R.C. 2945.401(G). Accordingly, appellant's sole assignment of error is sustained.

{¶21} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR